UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 6, 2015

LETTER TO COUNSEL

      RE:    *Roy Rayman v. Commissioner, Social Security Administration*;
               Civil No. SAG-14-3102

Dear Counsel:

On October 2, 2014, Plaintiff Roy Rayman petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 20, 29). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Mr. Rayman's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Mr. Rayman protectively filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 23, 2010. (Tr. 197-200). He alleged a disability onset date of August 2, 2007.[1] (Tr. 14). His claims were denied initially and on reconsideration. (Tr. 82-109, 113-25). A hearing was held on May 14, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 28-54). Following the hearing, the ALJ determined that Mr. Rayman was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 14-26). The Appeals Council denied Mr. Rayman's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Rayman suffered from the severe impairments of back pain; recurrent lumbar pain; neck pain; radiculopathy; major depressive disorder; bipolar disorder; learning disability; and ADHD. (Tr. 16). Despite these impairments, the ALJ determined that Mr. Rayman retained the residual functional capacity ("RFC") to:

      perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the
      claimant is limited to occasional balancing, kneeling, crouching, stooping,

---

[1] Mr. Rayman initially alleged an onset date of April 2, 2009, in his applications for DIB and SSI, (Tr. 197), but apparently amended his onset date to August 2, 2007, which is the onset date that appears in the hearing transcript, (Tr. 30), and the ALJ's decision, (Tr. 14).

> crawling, and climbing. In addition, the claimant is limited to unskilled work; requires a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards; and the claimant is limited to occasional contact with the public, supervisors, and co-workers.

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Rayman could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 25-26).

Mr. Rayman raises several arguments on appeal. Specifically he argues that the ALJ erred by: 1) failing to include limitations in the RFC assessment that adequately account for his moderate limitation in concentration, persistence, or pace, contrary to the holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); 2) not including any limitations in the RFC assessment related to Mr. Rayman's cervical radiculopathy or neck pain; and, 3) failing to properly support the weight assigned to each of the medical opinions of record. Each argument lacks merit and is addressed below.

Mr. Rayman first argues that the ALJ's findings of Mr. Rayman's mental limitations in the RFC assessment do not comport with the standard established by the Fourth Circuit in *Mascio*, 780 F.3d at 638. In *Mascio*, the Fourth Circuit determined remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d 632, 638 (4th Cir. 2015). Although a similar discrepancy appears to exist in this case, it is critically distinguishable in several respects, and *Mascio* does not require remand.

To understand why this case is distinguishable from *Mascio*, some background is necessary. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein,[2] consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the

---

[2] Listing 12.05, which pertains to intellectual disability, and Listing 12.09, which pertains to substance addiction disorders, do not follow this structure.

first three areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace, at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ found that Mr. Rayman has a moderate limitation in his ability to maintain concentration, persistence, or pace. In his discussion of the limitation, the ALJ noted medical records indicating that Mr. Rayman "displays depression, anxiety, mood swings, some difficulty with attention and concentration, difficulty completing tasks, and possible learning disability or below average intellectual functioning." (Tr. 19). The ALJ also noted that there was no evidence that Mr. Rayman experiences hallucinations or delusions and no evidence of abnormal thought content or process. *Id.* Finally, the ALJ cited statements by Dr. Cascella, a consultative psychological examiner, who found that Mr. Rayman was "alert" and "cooperative" during the examination. (Tr. 405). In his RFC assessment, the ALJ found that, with respect to his mental impairments, Mr. Rayman is limited to "unskilled work; requires a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards; and the claimant is limited to occasional contact with the public, supervisors, and co-workers." (Tr. 20). While limitation to unskilled work alone is insufficient under *Mascio*, here the ALJ included other limitations that clearly account for Mr. Rayman's moderate limitation in concentration, persistence, or pace. Specifically, the limitation to an

environment with few changes and no production quotas assures that Mr. Rayman is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace. Thus, the ALJ accounted for any time that Mr. Rayman would be off-task due to his limited ability to maintain focus. Accordingly, I find no error warranting remand under *Mascio*.

Next, Mr. Rayman argues that the ALJ erred by not including limitations in the RFC assessment related to his cervical radiculopathy or neck pain. Mr. Rayman cites complaints of pain in his left shoulder, arm, and fingers, as well as "constant stinging pain in his upper extremities." Pl. Mem. 6 (citing Tr. 253-54). In addition, he cites evidence of decreased sensation in his left fingers and arm, and chronic neck pain radiating to his left arm. *Id.* (citing Tr. 302, 435-36). There is no requirement that every severe impairment correlate with a particular restriction in the RFC assessment. *Carrier v. Astrue*, No. SAG-10-3264, 2013 WL 136423, at *1 (D. Md. Jan. 9, 2013). A claimant's burden of showing a severe impairment at step two is only a "de minimis screening used to dispose of groundless claims." *Taylor v. Astrue*, No. BPG-11-032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012) (quoting *Webb v. Barnhard*, 433 F.3d 683, 687 (9th Cir. 2005)). Accordingly, any doubt or ambiguity in the evidence at step two should be resolved in the claimant's favor, and the ALJ should continue with the sequential evaluation. SSR 85-28. While there is no requirement that each impairment correlate with particular restrictions, the ALJ's findings of the claimant's limitations must be supported by substantial evidence. *Carrier*, 2013 WL 136423 at *1.

In this instant case, the ALJ noted Mr. Rayman's allegations and reviewed the medical evidence of record, but found that none of the evidence indicated "substantial or ongoing treatment plans or recommendations relative to the claimant's physical impairments other than continued medication." (Tr. 22). Furthermore, the ALJ found that Mr. Rayman's reports of his activities of daily living were inconsistent with the degree of pain he alleged. Specifically, he noted that Mr. Rayman is able to care for his dog, help care for his children, play the guitar, attend church, do laundry, and maintain his driver's license. (Tr. 21). Thus, the ALJ found that Mr. Rayman's allegations about his physical limitations were not entirely credible. Even so, the ALJ gave little weight to the opinions of Drs. Sadler and Spetzler, who found that Mr. Rayman could lift or carry up to 50 pounds occasionally, finding that the opinions did not adequately account for Mr. Rayman's subjective complaints. (Tr. 23). Thus, the ALJ felt that restriction to the light exertional level adequately accounted for Mr. Rayman's subjective complaints, including his cervical radiculopathy and neck pain. Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, I find that the ALJ provided substantial evidence to support his findings of Mr. Rayman's physical limitations.

Finally, Mr. Rayman contends that the ALJ did not provide adequate explanation for the weight assigned to the medical opinions of record and did not properly apply the criteria for weighing medical opinions set out in the regulations. Specifically, Mr. Rayman states that the ALJ's discussion "sheds no light whatsoever on the actual weight accorded to any of the medical

opinions of record, as it fails to provide any cogent explanation regarding which opinions were credited, which opinions were rejected, and how much weight was accorded to any particular opinion." Pl. Mem. 7. Mr. Rayman also cites 20 C.F.R. §§ 404.1527(c) and 416.927(c), which provide that an ALJ should consider the following factors when assigning weight to a medical opinion: 1) examining relationship; 2) treatment relationship (including the length, nature, and extent of that relationship); 3) supportability; 4) consistency; 5) specialization; and, 6) other factors. Mr. Rayman contends that the ALJ erred by applying only one of these factors, that of consistency, in assigning weight to the medical opinions of record. However, upon review, I note that the ALJ cited not only the consistency of medical opinions with the record, but also treating relationship, examining relationship, the specialization of the medical source, and the supportability of the opinion based on Mr. Rayman's allegations and reported activities of daily living. *See* (Tr. 23-24). Thus, I find that the ALJ properly applied the regulations in assigning weight to the medical opinions, and that his findings are supported by substantial evidence.

For the reasons set forth herein, Mr. Rayman's Motion for Summary Judgment (ECF No. 20) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 29) is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

    Sincerely yours,

    /s/

    Stephanie A. Gallagher
    United States Magistrate Judge